IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DIANE GEORGE BACA,

      Plaintiff,

v.

                                                        No. 1:16-cv-01128-KRS

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

      Defendant.

## OPINION AND ORDER GRANTING MOTION TO REMAND
## AND REMANDING MATTER TO AGENCY
## FOR ADDITIONAL PROCEEDINGS

Plaintiff Dianne George Baca seeks review of the Social Security Administration's denial of her application for disability insurance benefits. *See* 42 U.S.C. § 423. With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b), the Court has considered Baca's motion to reverse and remand the agency's decision, the Commissioner's response in opposition, and Baca's reply. (*See* Docs. 22, 26, & 28). Because the Administrative Law Judge ("ALJ") improperly rejected the opinion of John Vigil, MD in fashioning Baca's residual functional capacity ("RFC"), the Court now **GRANTS** Baca's motion and remands the case to the agency for additional proceedings.

### I. BACKGROUND

Baca alleged disability beginning September 1, 2007 at age 55 and continuing until December 31, 2012, the date she last qualified for benefits ("date last insured"). Following a hearing, ALJ Donna Montano denied Baca's application for benefits. (AR 10-21; 64-96). At

step three of the five-part framework[1] used to evaluate disability, the ALJ concluded that Baca's chronic liver disease with cirrhosis, thrombocytopenia, and hepatitis C, conditions which the ALJ determined were severe, neither met nor equaled a listed impairment the agency has determined to be presumptively disabling. (AR 16-18). The ALJ ended the analysis at step four of the sequential process when she determined that Baca retained the RFC to perform her past relevant work as a drafter and billing clerk, which the ALJ classified as semiskilled and sedentary. (AR 18-20). The ALJ's decision became the agency's final action on August 11, 2016 when the Appeals Council denied review. (AR 1-6). This appeal followed. (Doc. 1). In her motion to reverse and remand the agency's adverse determination, Baca raises a single issue: whether the ALJ properly considered Dr. Vigil's assessments of her functional capabilities in determining that she could perform past relevant work. (Doc. 22).

## II. STANDARD OF REVIEW

This Court reviews the ALJ's decision to determine whether it is supported by substantial evidence and the ALJ applied the correct legal standards. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). If substantial evidence supports the conclusion that the plaintiff is not disabled and the ALJ followed the law, the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). The term "substantial evidence" means that which "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1118

---

[1] The five-part sequential analysis is used to determine disability where, as here, a plaintiff's application has been denied both initially and on reconsideration. *See* 20 C.F.R. § 404.1520(a)(4)(i–v). The framework asks whether the plaintiff (1) has engaged in "substantial gainful activity" (Step 1); (2) has a "severe medically determinable . . . impairment . . . or a combination of impairments" that either has lasted or is expected to last at least one year (Step 2); (3) has impairments that meet or equal one of the presumptively disabling impairments the agency has listed (Step 3); (4) is unable to perform her "past relevant work"; and (5) retains the residual functional capacity to perform work in the national economy in light of her age, education, and work experience 20 C.F.R. § 404.1520(a)(4)(i–v). The plaintiff bears the burden of proof on the first four steps. Because Baca seeks disability insurance benefits, she must meet her burden as of the date she last "insured" for benefits, December 31, 2012. The parties do not challenge the ALJ's determination that Chavez has not engaged in substantial gainful activity since her onset date and that she suffers from severe impairments at steps one and two respectively. For the sake of brevity, the Court does not further recount them.

(citation and internal quotation marks omitted). Even if the Court could reach the opposite conclusion, the decision must stand if the record as a whole is not "overwhelmed by other evidence" to the contrary or unless a "mere scintilla" supports it. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

### III. ANALYSIS

Dr. Vigil examined Baca on October 6, 2014 and concluded that Baca "has moderately severe functional limitation[s] . . . is moderately limited in both vocational and avocational activities secondary to her chronic pain," and her "disabilities . . . preclude her from performing anything more than sedentary to light work since at least 2007." [2] (AR 569; 574). Dr. Vigil also completed physical and non-physical "medical assessment(s) of ability to do work related activities." (AR 576). In these forms, Dr. Vigil determined Baca could only occasionally lift less than five pounds; was "markedly limited" in her ability maintain attention and concentration for extended periods; "moderately limited" in her ability to perform activities within a schedule; "moderately limited" in her ability to maintain physical effort for long periods; "markedly limited" in her ability to work in coordination with others; and "markedly limited" in her ability to complete a normal workday and workweek without interruptions from pain or fatigue. (AR 575-78).

In formulating Baca's RFC to include sedentary work, the ALJ afforded Dr. Vigil's opinion "little weight." (AR 19-20). The ALJ rejected Dr. Vigil's assessment of Baca's physical

---

[2] The Court recognizes that Dr. Vigil has provided a "retrospective diagnosis." Because Baca seeks disability insurance benefits, she must show she was disabled on or before her December 31, 2012 date last insured. Dr. Vigil's assessment in 2014 purports to apply from 2007 onward. Under Tenth Circuit case law, such diagnoses are permitted, but "[t]he relevant analysis" is whether the plaintiff "was actually disabled prior to the expiration of her insured status." *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990). The Court of Appeals has cautioned courts that "(a) retrospective diagnosis without evidence of actual disability is insufficient," which is "especially true where the disease is progressive." *Id.* The ALJ does not discuss Dr. Vigil's opinion as a retrospective diagnosis. Had the ALJ done so and provided any reasoning that the Court could follow, the Court might have reached the "relevant analysis." Because the ALJ did not explicitly or implicitly invoke the analysis applicable to retrospective diagnoses, the Court declines to do so for the ALJ or attempt a tortured reading of other parts of the ALJ's decision that might plausibly support the adverse determination.

capabilities because "even the claimant wrote that she is able to lift as much as 20 pounds occasionally." (AR 19). In terms of the "marked emotional limitations," the ALJ disregarded Dr. Vigil's evaluation because "the evidence of record reflects no treatment for any emotional difficulties during the relevant period." (AR 19). Baca challenges the ALJ's weight assignment as insufficiently reasoned to permit meaningful appellate review. The Court agrees that ALJ Montano improperly rejected Dr. Vigil's opinion as to Baca's non-physical limitations. The Court does not reach Baca's challenge to ALJ Montano's failure to accept Dr. Vigil's assessment of physical capabilities; on remand, the agency should consider Dr. Vigil's opinion in its entirety under the correct legal standard.

### A. The ALJ's Consideration of Dr. Vigil's Assessment

The ALJ must "give consideration to all the medical opinions in the record." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(c)). Further, the ALJ is obligated to "discuss the weight (s)he assigns to such opinions" and give "specific, legitimate reasons" for rejecting an assessment. *See Miller v. Chater,* 99 F.3d 972, 976 (10th Cir. 1996) (citation omitted). In determining what weight, if any, to afford to an opinion, the ALJ considers: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Id.* However, not all factors will apply in each case, and express discussion of all six factors is not necessary. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

In this case, the ALJ discounted Dr. Vigil's assessment of non-physical limitations solely because Baca did not seek treatment for her "emotional difficulties." Facially, the ALJ's reason

does not implicate any of the applicable factors.  In terms of specificity, the Court is left to guess what the ALJ means by emotional difficulties.  If the ALJ's vague reference is to all of the "marked limitations" included in Dr. Vigil's "non-physical" assessment of Baca's the ability to do work-related activities, it is unclear, for example, how Baca's difficulty in completing "a normal workday and workweek without interruptions from pain or fatigue based symptoms" qualifies as an "emotional difficulty."  In other words, Dr. Vigil's opinion covers more than emotion as the term "non-physical" implies.  Even if the Court could follow the ALJ's reasoning as to the "marked emotional difficulties," the ALJ does not mention at all other "moderate limitations" Dr. Vigil discussed.  Since the ALJ concluded that Baca could perform her past sedentary, semiskilled work, the limitations are not accounted for in the RFC.  A limitation to sedentary work concerns "[p]hysical exertion requirements," *see* 20 C.F.R. §404.1567, not non-exertional demands such as the ability or inability to perform tasks within a given schedule as Dr. Vigil evaluated here. There may well have been a legitimate reason why the ALJ crafted the RFC without Dr. Vigil's assessments.  The Court, however, cannot discern it here.

More fundamentally, the ALJ does not explain how a lack of treatment equates to the absence of disability.  While a person might be expected to seek treatment for a severe medical condition, mental illness may well go undiscovered or undiagnosed.  The Tenth Circuit  has cautioned—albeit in the context of analyzing severity at the second step—that "the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations" and "attempting to require treatment as a precondition for disability would clearly undermine the use of consultative examinations." *Grotendorst v. Astrue*, 370 Fed. Appx. 879, 883 (10th Cir. 2010).  In the Court's view, there is also a distinction in this context between cases "where a person simply fails to recognize she suffers from a mental illness" meaning "the failure to seek treatment should not be understood as indicating the

absence of impairment" and instances where a plaintiff knowingly does not continue or commence treatment. *Atherton v. Astrue*, 2007 U.S. Dist. LEXIS 94714, *6 (D. Kan. Dec, 27, 2007). In this case, it could be that Baca falls into the former set of circumstances, which may be a valid consideration for giving less weight to Dr. Vigil and suggest his conclusions are inconsistent with the record. Without any specific findings supported by evidence, however, the Court is unable to meaningfully review the ALJ's conclusion. The Court therefore remands that the case to the agency to fully consider Dr. Vigil's retrospective opinion.

### IV. CONCLUSION

For the reasons stated above, the ALJ improperly rejected Dr. Vigil's limitations in determining that Baca could perform her past relevant work.

**IT IS, THEREFORE, ORDERED** that Baca's motion to reverse or remand (Doc. 22) is **GRANTED** and the matter is **REMANDED** to the agency for additional proceedings commensurate with this decision.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent